Entered on Docket
November 13, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

NOV 13 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re: ) BAP No. NC-12-1121-PaMkH
)
HARRY PALMER ALTICK, ) Bankr. No. 08-10419
)
        Debtor. )
_____)
)
HARRY PALMER ALTICK, )
)
        Appellant, )
)
v. ) **M E M O R A N D U M**[1]
)
LINDA S. GREEN, Chapter 7 Trustee, )
)
        Appellee. )
_____)

Argued and Submitted on October 18, 2012
at San Francisco

Filed - November 13, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

_____

Appearances:    Iain A. MacDonald of MacDonald & Associates argued for appellant Harry Palmer Altick; Jean Barnier of MacConaghy & Barnier, PLC argued for appellee Linda S. Green.

_____

Before: PAPPAS, MARKELL and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellant Harry Palmer Altick ("Altick") appeals the order of the bankruptcy court sustaining the objection of chapter 7[2] trustee Linda S. Green ("Trustee") to Altick's claim of exemption. We AFFIRM.

**FACTS**

Altick is a senior investment advisor for Sperry van Ness/Commercial Realty Group, specializing in the sale of multifamily and office properties in Sonoma, Marin and Alameda counties. He has over thirty-three years of experience in such sales. Altick also personally invests in these properties.

Apparently, Altick's investments in certain properties had rapidly declined in value by 2008 and he was forced to file for bankruptcy. He was also involved in proceedings in state court at that time for the division of marital property with his former spouse. One of his investments was a 50 percent member's interest in Gold Dome, LLC ("Gold Dome"). Gold Dome owned a luxury home and three adjacent lots in Cabo San Lucas, Baja California Sur, Mexico. On March 11, 2008, the state court judge ordered the sale of Altick's interest in Gold Dome for $350,000. A wire transfer of $350,000 was sent that day from the purchaser, Sidney Ingram, to the special account authorized by the state court.

The sale was stopped when, that same day, Altick filed a petition for relief under chapter 11. According to the disclosures in Altick's original bankruptcy schedule B, he owned

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

-2-

50 percent of the equity in Gold Dome; he valued Gold Dome at $3 million with $960,000 in debt. Altick valued his member's interest in the LLC as "unknown." He did not claim an exemption in this interest; however, Altick did claim a homestead exemption under Cal. Code Civ. P. § 704.950 in his residential real property in Greenbrae, California. Altick's schedule F listed $43,115.95 in priority unsecured claims, and $423,073.14 in general unsecured claims.

On February 9, 2009, Altick filed a proposed chapter 11 plan and disclosure statement. The plan provided for payments of $43,200 to unsecured creditors, which presumably would all go to the priority unsecured claims, with nothing to the general unsecured claims. Altick's disclosure statement also stated: "The alternative liquidation in chapter 7 would likely net no distribution to unsecured creditors as set forth in the Liquidation Analysis attached hereto as Exhibit A." The liquidation analysis predicted a negative $26,400 for distribution after a hypothetical liquidation of Altick's nonexempt assets. Among the listed assets was Altick's member's interest in Gold Dome, which he indicated had a value of $900,000, debts of $960,000, no exemption, and no net equity. This disclosure statement, with a minor amendment not affecting the Gold Dome analysis, was approved by the bankruptcy court on February 24, 2009. The plan was confirmed by the bankruptcy court on April 20, 2009.

The United States Trustee ("UST") moved to dismiss or convert Altick's chapter 11 case to one under chapter 7 on January 27, 2011. The UST informed the bankruptcy court that Altick had

-3-

failed to pay accrued UST fees, and alleged Altick was not current on payments under the plan. Altick filed a voluntary motion to convert the case to chapter 7 on March 4, 2011, admitting that he could not make the required payments under the confirmed plan. The bankruptcy court ordered conversion to chapter 7 the same day. Ms. Green was appointed to serve as chapter 7 trustee.

Altick was examined at a § 341(a) meeting of creditors on April 20, 2011. In response to Trustee's request for information about Gold Dome, Altick testified that:

> It is a limited liability company that I own — I have a 50 percent interest. Unfortunately, the property in Cabo which is — the real estate has been a negative cash flow every year, and that market I have been told by the brokers has a 45-year supply of inventory of properties for sale, and things are not selling. So, in my opinion, I have really no equity in that property, or the LLC.

§ 341(a) Hr'g Tr. 4:20—5:2, April 20, 2011. Based on Altick's denial of equity in Gold Dome and other assets, Trustee filed a Notice of No Distribution on April 22, 2011.

Shortly after filing the No Asset report, Trustee was contacted by the other members of Gold Dome, Patrick and Yolanda Lopez, who offered to purchase the bankruptcy estate's interest in Gold Dome for $10,000. Trustee filed a motion to approve the sale on May 20, 2011 (the "Sale Motion").

Two weeks later, on June 2, 2011, Altick filed an Amended schedule C, and for the first time claimed a $21,000.00 "wildcard" exemption in his interest in Gold Dome under Cal. Code Civ. Proc. § 703.140(b)(5), listing the value of the asset as "Unknown." The amended schedule also omitted, and presumably withdrew, the homestead exemption Altick had previously claimed on the Greenbrae

-4-

property.  Altick also objected to the Sale Motion.

Trustee objected to Altick's attempt to amend his claim of exemptions on June 8, 2011 (the "Exemption Objection").  Trustee argued that Altick had acted in bad faith by filing the amended schedule C only after he learned that his interest in Gold Dome would be sold by Trustee.  Trustee suggested that creditors, who relied on Altick's statements in the disclosure statement in the chapter 11 case that all his assets were declining in value, would be prejudiced by allowing the amended exemption claim.  Finally, Trustee argued that under this Panel's ruling in <u>In re Wolfberg</u>, 255 B.R. 879 (9th Cir. BAP 2000), Altick could not amend his claim of exemption after the confirmation of his plan because the plan had the preclusive effect of a final judgment.

A hearing on Trustee's Sale Motion was conducted by the bankruptcy court on June 10, 2011.  The court overruled Altick's objection to the sale for the "reasons for decision on the record."  A transcript of that hearing is not in the record.  After the Lopezes agreed to increase the purchase bid to $40,000, the court approved the sale.  Altick has not appealed that ruling.

Also on June 10, Altick's attorney requested to withdraw from the case.  In counsel's declaration attached to the request, counsel stated that "Debtors [sic] continue to 'have questions' and to desire to take positions inconsistent with his testimony which cannot be reconciled.  It is not ethically possible for me to continue in the representation of the Debtor."  Chandler Dec. at ¶¶ 6-7, June 10, 2011.

The bankruptcy court held its first hearing on the Exemption Objection on August 22, 2011.  A transcript of that hearing is not

-5-

in the excerpts of record or the court's docket. The bankruptcy court issued a Memorandum on Objection the same day ("Memorandum I"). In it, the court ruled in favor of Altick on the legal question argued by Trustee: "The court finds that confirmation of Altick's Chapter 11 plan did not divest Altick of his ability to amend his claim of exemptions on conversion to chapter 7. [Trustee's] objection to the claim of exemption on grounds of res judicata will accordingly be overruled." Memorandum I at 2.

However, the bankruptcy court determined that Trustee's arguments that Altick had engaged in bad faith in asserting his amended exemption claim could not yet be decided:

> The allegations of bad faith and prejudice require the Court to take evidence, and are accordingly not ripe for adjudication at this time. The Court notes only that nothing submitted so far by [Trustee] would meet her burden on these issues. Pursuant to Rule 4003(e) of the Federal Rules of Bankruptcy Procedure, [Trustee] has the burden of proving that exemptions are not properly claimed.

Memorandum I at 2 n.1.

The continued evidentiary hearing on Trustee's Exemption Objection took place on February 8 and 15, 2012. The bankruptcy court heard testimony from Patrick Lopez, Mark Lee (controller of the creditor holding a secured interest in Gold Dome), Terrie Olson (Altick's ex-spouse), and Trustee. Altick also testified both days of the hearing. After closing arguments, the bankruptcy court took the issues under submission.

On February 15, 2012, the bankruptcy court entered a Memorandum on Objection to Claim of Exemption ("Memorandum II"). In sum, the court held that:

-6-

> The court is convinced that Altick intentionally misrepresented the value of his interest in Gold Dome to his creditors in his disclosure statement in order to induce them to go along with his plan. At that time, Altick knew that his interest in Gold Dome had significant value. The delay in liquidating the interest in Gold Dome resulted in greatly diminished dividend to unsecured creditors. It would be unjust to allow Altick to benefit from the fruits of his misrepresentation of claiming an exemption in Gold Dome.

Memorandum II at 3, February 15, 2012.

On February 17, 2012, the bankruptcy court entered an Order Sustaining Trustee's Objection to Claim of Exemption. Altick filed a timely appeal on February 28, 2012.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court clearly erred in finding that Altick acted in bad faith in fi+ling his amended claim of exemption.

**STANDARD OF REVIEW**

"Bad faith is a finding of fact reviewed for clear error." Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 774 (9th Cir. 2008). A debtor's bad faith in amending an exemption claim is a question of fact reviewed under the clearly erroneous standard. Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000).[3] "The clear error standard is significantly deferential

---

[3] The Panel in In re Arnold distinguished between analysis of amended exemptions where there is a question of a debtor's right to claim an exemption, which is reviewed de novo as a question of law, and the debtor's intent in claiming the
(continued...)

-7-

and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." <u>Fisher v. Tucson Unified Sch. Dist.</u>, 652 F.3d 1131, 1136 (9th Cir. 2011).

**DISCUSSION**

**I.   Altick's procedural argument lacks merit.**

As a preliminary matter, Altick devotes a considerable portion of his Opening Brief to arguing that the bankruptcy court erred when it did not conclude the proceedings after the first hearing on the Exemption Objection "when it did not overrule the trustee's objection in full when it found there was no genuine issue of material fact." Altick Op. Br. at 8. For support, Altick relies on the footnote in Memorandum I quoted above where the bankruptcy court states, "The allegations of bad faith and prejudice require the court to take evidence, and are accordingly not ripe for adjudication at this time. The court notes only that nothing submitted so far by Green would meet her burden on these issues." Memorandum I at 2 n.1.

Altick bases his procedural argument on Bankr. N.D. Cal. R. 9014-1(b)(3)(C) which provides, "On [matters not involving objections to claims] in which the Court determines that there is a genuine issue of material fact, the Court may treat the hearing

---

³(...continued)
exemption, which is a question of fact reviewed for clear error. 252 B.R. at 784. In Memorandum I, the bankruptcy court dismissed Trustee's legal challenge to Altick's right to amend the exemption, and Trustee did not appeal that decision. Thus, the only remaining question is factual, whether Altick engaged in bad faith in amending the exemption, an issue reviewed for clear error. Altick agrees that: "This Court reviews the bankruptcy court's findings of the debtor's bad faith with respect to his claim of exemption for clear error." Altick Op. Br. at 8.

-8-

as a status conference and schedule further hearings as appropriate." Here, Altick argues based on the bankruptcy court's comments in the footnote in Memorandum I that, after the first hearing, Trustee had not offered evidence to establish a genuine issue of material fact concerning Altick's alleged bad faith, and therefore, the bankruptcy lacked any basis for allowing a second, evidentiary hearing. We conclude that Altick's procedural argument lacks merit for several reasons.

First, the bankruptcy court did not make a finding that there was no genuine issue of material fact. The court's footnote comment that nothing Trustee submitted would meet her burden was, at best, an observation, not a finding.

Second, Local R. § 9014-1(b)(3)(C) simply cannot be read to bind the court in any way. Note that the operative words here are: "The court <u>may</u> treat. . . ." These words are permissive, not mandatory. And this conclusion is reinforced by the introductory words beginning Local R. § 9014-1(b)(1)(a), indicating that the provisions of the rule applied to hearings in contested matters, "[u]nless otherwise ordered . . . ." Clearly, then, even if the local rule were implicated here, the bankruptcy judge had discretion to vary the procedure.

Third, Ninth Circuit case law recognizes that a court has discretion to continue a hearing or trial.

> It was not an error for the bankruptcy court to continue the [] motion for a further hearing . . . . Trial courts are vested with "ample discretion to control their dockets." <u>Med. Lab. Mgmt. Consultants v. Am. Broad. Co.</u>, 306 F.3d 806, 826 (9th Cir.2002). This discretion necessarily includes the option to refuse to rule on particular issues, <u>id.</u>, and to consider additional evidence. <u>Pit River Home & Agr. Coop. Ass'n v. United States</u>, 30 F.3d 1088, 1096 (9th Cir. 1994).

-9-

Ng v. Farmer (In re Ng), 477 B.R. 118, 119-20 (9th Cir. BAP 2012). The bankruptcy court may continue a hearing on its own motion. United States v. Orlando, 553 F.3d 1235, 1237 (9th Cir. 2009)("A [trial] court's grant or denial of a continuance is reviewed for abuse of discretion even where, as here, no motion for continuance was made."); United States v. Moreland, 509 F.3d 1201, 1211 (9th Cir. 2007) (same).

Finally, in this case, it may well have been an abuse of discretion for the bankruptcy court _not_ to continue the hearing so that Trustee could submit evidence concerning Altick's alleged bad faith. A debtor's subjective state of mind is an important factor in determining whether a debtor has engaged in bad faith. Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 630 (9th Cir. BAP 2010). A trial court's consideration of a litigant's state of mind, for purposes of determining intent, largely turns on the court's assessment of that litigant's credibility. Hernandez v. New York, 500 U.S. 352, 364 (1991). A bankruptcy court abuses its discretion when it refuses to hold an evidentiary hearing on disputed questions of fact that hinge on the credibility of witnesses. Syob v. Bryan (In re Bryah), 261 B.R. 240, 247-49 (9th Cir. BAP 2001) (citing United Commercial Ins. Serv. V. Paymaster Corp., 962 F.2d 853, 858 (9th Cir. 1992)).

Here, the bankruptcy court opted to decide the legal issue raised by Trustee in opposition to Altick's amended exemption claim first. When it decided that Altick's exemption claim was not barred by the prior confirmation of the chapter 11 plan, the bankruptcy court properly directed Trustee to schedule an evidentiary hearing concerning Trustee's allegation that Altick

-10-

was guilty of bad faith in asserting the amended exemption for his interest in Gold Dome. For these reasons, we conclude that the bankruptcy court did not abuse its discretion when it did not conclude the proceedings after the first hearing on the Exemption Objection.

**II. The bankruptcy court did not clearly err in finding that Altick acted in bad faith in asserting his amended claim of exemption.**

Rule 1009(a) provides that a debtor may amend schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). However, a debtor's right to amend schedules is not unfettered. Rule 4003(b)[4] permits a party in interest, which includes Trustee in this case, to object to a debtor's amended claim of exemption. And both the Ninth Circuit and this Panel have adopted the Eleventh Circuit's holding in Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1983), that a bankruptcy court may disallow a claim of exemption on a showing of "bad faith by the debtor or prejudice to creditors." Martinson v.

---

[4] (b) Objecting to a claim of exemptions.

(1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.
(2) The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption. The trustee shall deliver or mail the objection to the debtor and the debtor's attorney, and to any person filing the list of exempt property and that person's attorney.

Rule 4003(b)(1) and (2).

-11-

Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998); In re Nicholson, 435 B.R. at 630.

Courts have cited numerous examples of debtor conduct constituting bad faith that justify denial of an exemption or an amendment to an exemption. The most common example is where a debtor attempts to conceal an asset. Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 890 (8th Cir. 2002); In re Nicholson, 435 B.R. at 630. Although we find little difference between the bad faith intention of a debtor in concealing an asset, and that exhibited by disclosing the asset but misrepresenting its value, bad faith can also be found where, as here, the debtor provides a false value regarding a disclosed asset. Hannigan v. White (In re Hannigan), 409 F.3d 480, 482 (1st Cir. 2005)(undervaluing an asset was bad faith and resulted in loss of right to claim an exemption); Bauer v. Iannocone (In re Bauer), 298 B.R. 353 (8th Cir. BAP 2003) (bad faith existed where debtors concealed the equity in their home, and when fire destroyed the home, they attempted to assert true value and claim homestead exemption in the insurance proceeds); see also 4 COLLIER ON BANKRUPTCY ¶ 522.08[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2009)(bad faith shown when debtor lists erroneous value on assets claimed exempt). Whether a debtor has exhibited bad faith in making an amendment to an exemption claim is determined by the totality of the circumstances. In re Nicholson, 435 B.R. at 630.

The bankruptcy judge presided over proceedings spanning four years in this bankruptcy case, both under chapter 11 and chapter 7. The court found that, during the case, Altick shifted

Case: 08-10419   Doc# 239   Filed: 11/13/12   Entered: 11/13/12 14:19:06   Page 12 of 17

his position regarding the value of his member's interest in Gold Dome. In his original schedules filed on March 31, 2008, Altick listed the value of his interest in the LLC as "unknown." This was despite his valuation of the entire property in schedule B, of which he owned 50 percent, as $3 million less $960,000 in debt. Additionally, Altick admitted that he filed his chapter 11 petition to stop the sale of his interest by the state court for $350,000. Then, a few days later on April 8, 2008, at the chapter 11 § 341(a) meeting, he told counsel for UST that Gold Dome was his "one asset" with "significant equity." Memorandum II at 3. Ten months later, in his February 2009 disclosure statement liquidation analysis, Altick valued his interest in Gold Dome as "0" with net equity of "0." Altick repeated the "0" value for his interest at his Rule 2004 examination conducted by Trustee in November 2009.

Altick's principal argument to explain the change in his values for his interest in Gold Dome was that the $350,000 offer made just before the bankruptcy petition was filed was for the purchase of not only the Cabo villa, but three adjacent lots as well. Therefore, Altick explains, since the lots were sold off during the bankruptcy case, the value of Gold Dome (with only the villa remaining) was thereafter considerably less.

The bankruptcy court, however, had evidence that the prebankruptcy $350,000 offer was for the membership interest in the villa <u>without</u> the three adjacent lots. Charles Ingram, the purchaser who attempted to deposit the $350,000 according to the state court's order, provided a declaration to the state court stating that he made his offer with knowledge that the three

-13-

Case: 08-10419  Doc# 239  Filed: 11/13/12  Entered: 11/13/12 14:19:06  Page 13 of 17

adjacent lots were to be sold in a separate transaction. Ingram Dec. at ¶6, March 10, 2008. Two nearly identical letters of intent, received by the state court at the same time, offered to purchase for $350,000 the membership interest of:

> the Gold Dome, LLC, a California limited liability company which purports to own all of a resort facility known as "Villa Golden Dome" located in Cabo San Lucas, Baja California Sur, at Camino del Mar #365 (Lot No. 26 of Block No. 16)[.]

Letters (2) of Curtis Berland and James B. House, March 10, 2008. Lot No. 26 is the Villa alone; the three adjacent lots are Nos. 27, 28, and 29.

Although Altick disputed that the $350,000 offers included both the villa and adjacent lots, the bankruptcy court was presented with two permissible views of the evidence and its choice among them cannot be clearly erroneous. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

The bankruptcy court observed that, if the only evidence of falsity concerning Gold Dome's value was Altick's statement at his Rule 2004 examination, it doubted that it would sustain Trustee's objection to the amended claim of exemption; perhaps the passage of time had erased any of Altick's equity in Gold Dome. However, the court targeted the evidence provided in the disclosure statement and liquidation analysis submitted only ten months after Altick described Gold Dome as his "one asset" with "significant equity." As the bankruptcy court explained:

> However, the representation in the disclosure statement that Gold Dome had no value was patently false and had a direct impact on the creditors. It gave the creditors the false impression that liquidation of his assets would result in little or no dividend. Had they known the truth, Altick's plan would not have been confirmed and the case would have been converted two years ago.

-14-

> The court is convinced that Altick intentionally misrepresented the value of his interest in Gold Dome to his creditors in order to induce them to go along with his plan. At that time, Altick knew that his interest in Gold Dome had significant value. The delay in liquidating the interest in Gold Dome resulted in a greatly diminished dividend to unsecured creditors. It would be unjust to allow Altick to benefit from the fruits of his misrepresentation by claiming an exemption in Gold Dome.

Memorandum II at 3.

A review of the liquidation analysis supports the bankruptcy court's findings. The analysis shows Altick's estimate that he had $146,100 in net nonexempt assets potentially available for distribution to creditors, expected to incur $172,500 in expenses and fees in the event of a liquidation, resulting in a negative balance of $26,400, and a final total of "0" available to unsecured creditors. The assets listed included Gold Dome with "0" net available to unsecured creditors. Of course, even a small increase in Gold Dome's net value would shift the balance into the black, providing a possible distribution to unsecured creditors.

Altick's representations about the value of his interest in Gold Dome affected whether his proposed plan satisfied the "best interests of the creditor" test of § 1129(a)(7)(A)(ii), which requires that:

> With respect to each impaired class of claims or interests — (A) each holder of a claim or interest of such class . . . (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

§ 1129(a)(7)(A)(ii). Altick's representation in his disclosure statement that he had no valuable equity in Gold Dome potentially

-15-

misled unsecured creditors considering whether to accept Altick's plan. Altick's confirmation of a chapter 11 plan, based upon an uninformed balloting process and Altick's inaccurate liquidation analysis, potentially prejudiced his creditors.

The bankruptcy court was well acquainted with the parties and their positions. It considered evidence that eleven months before the disclosure statement was filed, Altick filed the chapter 11 petition to avoid the sale of his interest in Gold Dome for $350,000, a sum that had actually been deposited in an escrow account. The bankruptcy court was given documentary evidence that there were two other offers for his interest for approximately the same amount. At one time, Altick had described his interest in Gold Dome as his one asset with significant equity. While Altick testified that real estate prices declined during the relevant period, he provided no other admissible evidence to support his theory. In addition, there were conflicting statements and documents relating to the amount of debt chargeable against Altick's interest.

Simply put, the bankruptcy court did not clearly err when it found that Altick was not forthcoming when he originally disclosed the value of his Gold Dome interest to the bankruptcy court and Trustee. The bankruptcy court was presented with two conflicting views of the evidence regarding Altick's knowledge and intention in previously representing to the bankruptcy court and creditors that his interest in Gold Dome had no value. After considering the evidence, the bankruptcy court found that Altick had misrepresented the value of Gold Dome to his creditors in order to induce them to support his chapter 11 plan. As a result, the

-16-

bankruptcy court declined to allow Altick an opportunity to exempt the value of Gold Dome to be realized by Trustee in the chapter 7 case. The bankruptcy court's choice of two permissible views was not clearly erroneous. Elliott, 322 F.3d at 714.

**CONCLUSION**

The bankruptcy court did not clearly err when it found that Altick had engaged in bad faith. Therefore, the bankruptcy court did not err when it denied Altick's amended claim of exemption as to the Gold Dome interest. We AFFIRM the order of the bankruptcy court.[5]

---

[5] Trustee argues that the bankruptcy court's order can be affirmed for the same reason she urged in the bankruptcy court: that Altick was barred from asserting an amended exemption claim as to Gold Dome by the preclusive effect of his confirmed chapter 11 plan. Given our disposition, we need not, and do not, reach Trustee's alternate argument.